635 So.2d 610 (1994)
Toni RUSHING, Plaintiff-Appellee,
v.
Ben H. RUSHING, Jr., Defendant-Appellant.
No. 93-1066.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*611 Otis Edwin Dunahoe, Jr., Natchitoches, for Toni Rushing.
Ronald E. Corkern, Jr., Natchitoches, for Ben H. Rushing Jr.
Before GUIDRY and LABORDE, JJ., and CULPEPPER[*], J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This suit for reduction of child support payments is again before us on appeal after the remand ordered in Rushing v. Rushing, 614 So.2d 268 (La.App. 3d Cir.1993). In our prior opinion we held that the totality of the evidence presented by Ben Rushing was sufficient to raise a presumption that he was entitled to a reduction in his support obligation. We remanded for the presentation of evidence by Toni Rushing to either disprove the change in circumstances alleged or prove other facts mitigating against the reduction. A hearing was held on May 25, 1993, on the issue, and the trial court again denied the reduction. We quote the trial court's oral reasons in part: "Under the circumstances the Court is going to have to deviate from the guidelines. I deviate from the guidelines because I have no choice. There's just simply not enough money to reduce these child support payments. The application of Mr. Rushing therefore to reduce his child support payment must be and is hereby denied by the Court." Mr. Rushing appeals.

*612 DISCUSSION
The initial inquiry is whether Mrs. Rushing rebutted the presumption that Mr. Rushing is entitled to a reduction. She was required to either disprove the change in circumstances alleged or prove other facts mitigating against the reduction.
Although it is not clear to us, it appears that the trial court either did not make findings in this regard or did not base his denial of the reduction on Mrs. Rushing having successfully discharged her burden of proof on the issue. Rather, it appears that the trial court based the denial of a reduction on a "deviation" from the child support guidelines to the extent of maintaining the previous support award. Indeed, in her appellate brief, Mrs. Rushing states: "The sole purpose for remanding the case was to permit Mrs. Rushing to rebut that presumption that a change had occurred and to offer any evidence that she might have in order to support the deviation from the standard child support guidelines. It would therefore be a useless function for the trial court to simply acknowledge what this Court of Appeal had already ruled, and counsel does not (nor could he,) object or contend that a change in circumstances as to Mr. Rushing's condition had in fact occurred. The basis of Mrs. Rushing's evidence was simply to show that there were additional expenses that Mr. Rushing had not taken into account in establishing what his child support obligation should be under the law, and also that there were bases for the court to deviate from a cold application of the child support guideline amounts."
Finding that Mrs. Rushing did not present evidence sufficient to rebut the presumption, we hold that Mr. Rushing is entitled to the reduction. We now address the amount of the reduction.
The prior payments by Mr. Rushing of $800 per month plus the provision of health insurance were determined in a consent judgment. Since this rule to reduce was filed in August of 1991, the Child Support Guidelines, LSA-R.S. 9:315 et seq., apply. See LSA-R.S. 9:315.1(A).
Although the trial court stated that it was "going to have to deviate from the guidelines," it is unclear to us what amount the court found was proper under the guidelines. The court noted three different figures: $887 a month or $815 a month proposed by Mrs. Rushing and $618 a month proposed by Mr. Rushing. It does not appear that the trial court completed a worksheet.
LSA-R.S. 9:315.1(B) provides:
"B. The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings."
Amended by Acts 1992, No. 123, § 1, eff. June 5, 1992.
Because the trial court did not include its findings as to the amount of support that would have been required under a mechanical application of the guidelines, the judgment is deficient. In cases where the record contains adequate information upon which to make a child support determination under the guidelines, pursuant to LSA-C.C.P. Art. 2164, this court will apply the child support guidelines to the facts of the case rather than remand to the trial court. Lanclos v. Lanclos, 614 So.2d 170 (La.App. 3d Cir.1993).
We apply the guidelines as follows. Mr. Rushing's 1992 income tax return showed adjusted gross income of $37,009 or $3084.08 per month. Mrs. Rushing's 1992 income tax return showed adjusted gross income of $20,104.12 or $1,675.34 per month. In his calculation of monthly gross income, Mr. Rushing did not count as gross income the state tax refund for either himself ($107) or Mrs. Rushing ($81) or an IRA distribution ($1500) to Mrs. Rushing, although these amounts were included as income on the tax returns. Mrs. Rushing may have included the state *613 tax refunds in her calculations. It would appear that the tax refunds should not be included as "gross income" under LSA-R.S. 9:315(4)(a) as they may not be recurring income. We decline to include the $1500 IRA distribution to Mrs. Rushing since neither party included it or argued for its inclusion and there is some suggestion that the IRA is almost depleted so that this will not be recurring income for Mrs. Rushing. Thus, we recast Mr. Rushing's monthly gross income as $3,075.17 and Mrs. Rushing's monthly gross income as $1,543.59. Additionally, Mrs. Rushing may have also included as gross income for Mr. Rushing $125 a month as income "in kind" for Mr. Rushing's use of a company automobile. First, we note that Mr. Rushing purchased the automobile in June of 1992 from the company. In any event, the parties agreed that their circumstances would be viewed as of May, 1993, the date of the hearing. Thus, we have not included this amount in calculating Mr. Rushing's monthly gross income. Additionally, we do not include expense sharing by Mr. Rushing with his companion as the issue has been dropped by Mrs. Rushing insofar as the matter is being reviewed based upon circumstances as they existed in May of 1993, the time of the hearing. Mrs. Rushing stated in brief that "[t]here is evidence in the record that would support the conclusion that Mr. Rushing and [his companion] have basically terminated that relationship and that she no longer resides with him on a regular and consistent basis."
The parties' monthly gross income and monthly adjusted gross income are the same: $3075.17 for Mr. Rushing and $1543.59 for Mrs. Rushing. This gives a combined monthly adjusted gross income of $4618.76. Based upon this combined monthly adjusted gross income of $4618.76, under LSA-R.S. 9:315.14 the basic child support obligation is $1012. Mr. Rushing's percentage share of income is 67% and Mrs. Rushing's share is 33%.
LSA-R.S. 9:315.4 requires that the cost of health insurance premiums incurred on behalf of the children be added to the basic child support obligation. The parties are in disagreement over the amount of the premiums to be added. Mr. Rushing has been maintaining health insurance on the children. His employer holds $246.81 per month from his check for insurance. This figure includes coverage for himself and his two children. Mr. Rushing asserts that $171 of that amount is for the children's coverage. He arrived at that conclusion based upon information given to him by his employer's personnel office that the cost for coverage of a single employee without dependents would be $75.10; thus $171 per month is roughly the difference between the $246.81 total coverage and the $75.10 cost for him alone. Mrs. Rushing suggests $90.52 as the premium amount to be used in the calculations. However, this assertion is based on an estimate from an insurance company dated October, 1991, and is only for basic hospital/surgical coverage. We find Mr. Rushing's figure of $171 per month to be the appropriate figure to use for the cost of health insurance premiums to be added to the basic child support obligation.
LSA-R.S. 9:315.5 provides that by agreement of the parties or order of the court, extraordinary medical expenses incurred on behalf of the child shall be added to the basic child support obligation. One of the children needs braces and eyeglasses. An orthodontist gave an estimate of $2300 to $2500 concerning the braces, and Mrs. Rushing estimated the cost of the eyeglasses to be $200 to $250 a year. The parties disagree over whether to add these expenses to the basic child support obligation.
"Extraordinary medical expenses" means uninsured expenses over one hundred dollars for a single illness or condition. LSA-R.S. 9:315(3). We find that the expenses for the braces and the eyeglasses are extraordinary expenses within the meaning of LSA-R.S. 9:315(3). However, we decline to add the cost of the braces to the basic child support obligation since the expenses had not been incurred as of the May, 1993 hearing. Additionally, the estimate for the braces was accurate as of September of 1991, and the cost may have changed since this estimate was given. Rather, we hold that each party shall pay his or her percentage share of the cost of the braces. We add *614 $20.83 to the basic child support obligation for the cost of the eyeglasses ($250 divided by 12).
LSA-R.S. 9:315.6 provides in part that by agreement of the parties or order of the court, any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child, incurred on behalf of the child, may be added to the basic child support obligation. The children's school tuition is $1300 per year. The parties disagree over whether to add the cost of tuition to the basic child support obligation. We add $108.33 to the basic child support obligation for the cost of school tuition ($1300 divided by 12).
Adding together the basic child support obligation amount, the cost of the health insurance premiums, the cost of the eyeglasses, and the cost of the tuition, we arrive at a total child support obligation of $1312.16. We multiply each party's percentage share of combined adjusted gross income times the total child support obligation and find Mr. Rushing's share of the total child support obligation to be $879.15 and Mrs. Rushing's share of the obligation to be $433.01. Under LSA-R.S. 315.8(D), Mr. Rushing shall owe his total child support obligation as a money judgment, minus the cost of the health insurance premiums he is maintaining for the children. Thus, Mr. Rushing is directed to pay Mrs. Rushing $708.15 ($879.15-$171) per month, rather than $800 per month as child support. He is also directed to maintain health insurance on the children as per the prior consent judgment.

DISPOSITION
For the foregoing reasons, we reverse the judgment denying Mr. Rushing's rule to reduce child support. We recast the judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Ben Rushing pay unto Toni Rushing child support in the amount of $708.15 per month, in two equal installments, on the first and fifteenth of each month. Each party shall pay his or her percentage share of the cost of the braces.
We do not disturb the prior consent judgment's decree that Mr. Rushing maintain health insurance for the children. We assess one-half of the costs of this appeal to each party.
REVERSED AND RENDERED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.